UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CAMILLE THERIOT SCHAFER, ET AL | CIVIL ACTION |
| VERSUS | NO. 23-1387 |
| KEVIN DARR, M.D., ET AL | SECTION : L (2) |

## ORDER AND REASONS

Pending before the Court is Plaintiffs Camille and Caroline Schafer's Motion for an adverse-inference jury instruction for spoliation of evidence. R. Doc. 28. AVALA filed an opposition memorandum. R. Doc. 35. Defendant Kevin Darr adopted the arguments of AVALA's opposition. R. Doc. 49. Plaintiffs filed a sur-reply. R. Doc. 46. Having considered the briefings, the Court rules as follows.

### I.   BACKGROUND

This case arises out of the alleged negligence, gross negligence, and medical malpractice of Defendants AVALA, Dr. Kevin Darr, Mr. Charles Peacock, and Dr. Jeffrey Boyne, which allegedly caused the death of Thomas E. Schafer, IV, the husband of Plaintiff Camille Theriot Schafer and the father of Plaintiff Caroline Schafer. R. Doc. 1 at 4-5. Plaintiffs are citizens of Mississippi. *Id.* at 2. AVALA is an LLC organized in the state of Louisiana. *Id.* Defendants Dr. Darr, Mr. Peacock, and Dr. Boyne are citizens of Louisiana. *Id.* The amount in controversy exceeds $75,000. *Id.*

In their complaint, plaintiffs allege that, on the morning of July 21, 2020, Mr. Schafer was admitted at AVALA for a routine right hip replacement surgery to be performed by Dr. Darr, an orthopedic surgeon. *Id.* at 4. Mr. Peacock was the presiding nurse anesthesiologist. *Id.* at 14. Plaintiffs allege that Mr. Peacock improperly administered medication including Diprivan and Fentanyl to Mr. Schafer, which led to a critical decline in Mr. Schafer's heart rate. *Id.* at 15. When

Mr. Peacock informed Dr. Darr at some point during the surgery that Mr. Schafer did not have a pulse, plaintiffs allege that Dr. Darr failed to follow the proper coding procedure set by AVALA. *Id.* at 13-14. Further, plaintiffs argue that Dr. Darr continued to operate on Mr. Schafer instead of preparing him for CPR. *Id.* at 14.

Dr. Boyne, an anesthesiologist, was summoned to the operating room at some point after Mr. Schafer flatlined. *Id.* at 16. Plaintiffs allege that Dr. Boyne failed to discontinue the flow of Diprivan until approximately twenty-five to thirty minutes after the first episode of asystole (flatline) and was slow to intubate Mr. Schafer and begin chest compressions. *Id.* Plaintiffs allege that Dr. Boyne erroneously believed Mr. Schafer had a pulmonary embolism, instead of realizing his asystole was medically induced. *Id.* According to plaintiffs, neither Dr. Boyne nor Mr. Peacock administered Narcan to Mr. Schafer when the crash cart arrived at the operating room. *Id.* at 15-16. Mr. Schafer allegedly suffered a substantial brain injury and died ten days later. *Id.* at 4.

On January 25, 2021, plaintiffs requested the formation of a Medical Review Panel ("the Panel"). *Id.* at 5. On March 15, 2021, after reviewing evidence, the Panel released the following opinions about each defendant individually: (1) All panelists agreed Dr. Darr did not breach the applicable medical standard of care; (2) All panelists agreed Mr. Peacock breached the applicable medical standard of care; (3) The panelists were split as to whether Dr. Boyne breached the applicable medical standard of care; (4) All panelists agreed AVALA did not breach the applicable standard of care. *Id.* at 5-6. Additionally, all panelists agreed that the conduct of all the defendants did not constitute gross negligence or willful misconduct. R. Doc. 27-2 at 9.

Plaintiffs, in part, contest the findings of the Panel because it applied "gross negligence" as an applicable standard of care pursuant to La. R.S. 29:771(B)(2)(c)(i), a Louisiana statute that only holds health care providers to a "gross negligence" or "willful misconduct" standard for injury or deaths they cause during a public health emergency. R. Doc. 1 at 6. Because

Mr. Schafer's operation occurred during the COVID-19 public health emergency, the statute is applicable. *Id.* at 8. Plaintiffs, however, argue in their Complaint that the statute is unconstitutional under both the Louisiana and United States Constitutions. *Id.* at 9.

On June 2, 2023, defendant Dr. Kevin Darr filed a Motion to Dismiss for Failure to State a Claim. On October 3, 2023, the Court denied the motion. On November 28, 2023, plaintiffs filed the instant motion.

## II.   PRESENT MOTION

In their motion, plaintiffs argue that they are entitled to an adverse-inference jury instruction for the spoliation of evidence. Specifically, they argue that the AVALA failed to preserve rhythm strips from the operating room monitor and defibrillator used by the medical personnel responding to decedent's code.[1] They argue that this contemporaneous medical evidence is missing from the decedent's medical record, which is critical to the plaintiffs' claims. In opposition, AVALA responds that plaintiffs cannot prove duty to preserve, relevance of the rhythm strips, intentionality, or bad faith. R. Doc. 35. Dr. Darr filed a motion to adopt AVALA's arguments, which the Court granted on December 21, 2023. R. Doc. 47; R. Doc. 49.

## III.   LAW

Spoliation of evidence is "the destruction or the significant and meaningful alteration of evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (quoting *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010)). When evaluating spoliation claims, federal courts with diversity jurisdiction must apply federal evidentiary rules. *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 573 (5th Cir. 2020). A spoliation claim has three elements: "(1) the spoliating party must have controlled the evidence and been under an

---

[1] When a patient "codes" in a hospital, it typically means that the patient is undergoing cardiac arrest. Cleveland Clinic, Hospital Code Blue: What It Means and Why It's Called? (last visited Dec. 19, 2023).

obligation to preserve it at the time of destruction; (2) the evidence must have been intentionally destroyed; and (3) the moving party must show that the spoliating party acted in bad faith." *Id.* at 574. Moreover, to receive an adverse-inference instruction based on spoliation of evidence, a party must establish that: "(1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Id.*

First, the spoliator must have had a duty to preserve evidence. *Id.* The obligation to preserve evidence kicks in when the party charged with spoliation should have reasonably anticipated litigation. *Id.* Identifying when the duty to preserve is triggered is necessarily a fact-intensive inquiry. *Id.* "When a party should reasonably anticipate litigation, it must preserve what it knows, or reasonably should know, is relevant in the action or reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Disedare v. Brumfield*, No. 22-2680, 2023 WL 5671998, *1, *3 (E.D. La. Sept. 1, 2023). In *Van Winkle v. Rogers*, the Fifth Circuit held that that litigation was reasonably foreseeable where the defendant had a duty to preserve a blown-out tire after he learned that the plaintiff's car had been hit by it and the plaintiff was hospitalized and emergency crew and law enforcement were headed to the scene. No. 22-30638, 2023 WL 5994138, *1, *3 (5th Cir. Sept. 15, 2023). However, the court in *Ross v. Lowe's Home Centers, LLC*, held that the defendant did not have a duty to preserve evidence where the only suggestion of future litigation was the mere existence of an incident. No. 15-4162, 2016 WL 4479509, *1 (E.D. La. Aug. 24, 2016).

Second, the party seeking an adverse-inference instruction must show that the spoliator intentionally destroyed evidence with a culpable state of mind. *Coastal Bridge Co., L.L.C.*, 833 F. App'x at 574. Negligence is not enough to satisfy this element. *Id.* The Fifth Circuit has emphasized

that an adverse inference shall only be imposed upon a showing that the spoliator acted in "bad faith." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). Bad faith requires a "purpose of hiding adverse evidence," *id.*, and must be proved with actual "evidence," not "mere allegation[s]." *Hodges v. Mosaic Fertilizer L.L.C.*, 289 Fed. App'x 4, 7 (5th Cir. 2008). However, "a court does have substantial leeway to determine intent through consideration of circumstantial evidence" because "direct evidence of intent rarely exists." *Lou v. Lopinto*, No. 21-80, 2022 WL 16685539, at *7 (E.D. La. Nov. 2, 2022).

Third, the destroyed evidence must have been relevant to the charging party's claim. *Coastal Bridge Co., L.L.C.*, 833 F. App'x at 574. "A party suffers prejudice where it cannot present evidence essential to its underlying claim." *Id.* at 575 (internal citations and quotations omitted).

## IV.    ANALYSIS

Here, plaintiffs must first prove that AVALA had a duty to preserve the rhythm strips from both the anesthesia monitor and the defibrillator in the moments leading up to the code procedure. *Coastal Bridge Co., L.L.C.*, 833 F. App'x at 574. Further, they must prove that duty existed at a time when litigation was foreseeable. *Disedare*, 2023 WL 5671998, at *3.

In arguing that a duty existed, plaintiffs primarily rely on the fact that hospital staff did not follow AVALA's policy manual regarding code procedures.[2] R. Doc. 28-1 at 7; R. Doc. 28-2. Though the defendant hospital concedes that it had control over the devices at the time of the incident, it argues that it did not have a duty to preserve evidence because litigation was not reasonably foreseeable at the time of the incident. R. Doc. 35 at 7.

---

[2] When a patient codes, the AVALA policy manual requires hospital staff to:
(1) Initiate code documentation on Cardiopulmonary Resuscitation Flow sheet with rhythm strips;
(2) STAT Procedure:
    a)  All documentation is done on the Code Record supplied on the emergency carts. The Code Record is a permanent part of the patient's record and …
    b)  The RN assigned to the patient is responsible for assuring that the Code Record is placed in the medical progress notes section of the patient record.

Regarding the anesthesia monitor, defendant Dr. Boyne testified that the standard practice was *not* to download and print strips from the device following any procedures—even in instances resulting in a code. *Id.* at 2; R. Doc. 35-1. Instead, the defendant hospital explains that the custom in place was to clear the monitor when the patient is discharged from the operating room. R. Doc. 35 at 2. In this instance, the hospital argues that the staff followed this procedure and deleted the decedent's data from the anesthesia monitor when he was discharged from the operating room. *Id.*

Policies and storage on the defibrillator are slightly different. Defendants aver that the defibrillator can only store data for up to two patients at a time and when it reaches its memory capacity, the device automatically deletes an entire patient record in a "first in, first out" basis. *Id.* at 2-3. Defendants explain that during a code procedure, a team member of the code team must initiate "code documentation on the Cardiopulmonary Resuscitation Flow sheet along with rhythm strips." *Id.* at 3. Here, defendants concede that the decedent's medical record did not contain any rhythm strips, but that the plaintiffs are not prejudiced "by any accidental failure to preserve those strips" because they have access to the other parts of the decedent's medical record along with the testimonies of the hospital staff in the operating room during the procedure. *Id.* at 8, 11.

The record further reflects that the defendant hospital received two letters in the mail, one from the decedent's father requesting access to the decedent's medical records and another from Plaintiffs' counsel two weeks later. R. Doc. 28-2. Both of which were sent after the incident. *Id.* The first letter, sent while the decedent was still alive, lacked the proper medical authorization needed for the defendant to oblige by such a request. *Id.* The second letter also lacked the required authorization to obtain the decedent's medical records, but contained a threat of legal action in the event that the hospital did not respond to the letter. *Id.*

Accordingly, the Court finds that the staff breached the hospital's policies on code procedure when no team member included the rhythm strips from the defibrillator in the decedent's

medical record. With that being said, the Court declines to find whether this breach occurred when litigation was reasonably foreseeable. Instead, the Court focuses on the second element of this inquiry, whether the staff destroyed evidence with a culpable state of mind. *Coastal Bridge Co., L.L.C.*, 833 F. App'x at 574.

In their initial briefing, plaintiffs do not even address this factor. R. Doc. 28-1. And in fact, in their sur-reply, they argue that determining whether the defendant's failure was intentional, or a simple oversight is best left up to the jury to resolve. R. Doc. 42-2 at 3. On the other hand, defendants argue that the failure to include the rhythm strips in the medical record was "an oversight following an emergent situation." R. Doc. 35 at 8. Accordingly, Plaintiffs have yet to demonstrate that defendants, in bad faith, neglected to include the rhythm strips in the decedent's medical record. *Hodges*, 289 Fed. App'x at 7. Without more, the Court cannot find that the defendants destroyed the rhythm strips with a culpable state of mind.

Since plaintiffs fail to meet this second element, their entire motion fails. The Court declines need not discuss the last element as all must be met to establish a spoliation claim and an adverse-inference instruction. *Coastal Bridge Co., L.L.C.*, 833 F. App'x at 573. The Court is sympathetic to the plaintiffs as they mourn the loss of a loved one and notes that in this circuit, the threshold to succeed on a spoliation claim is difficult to meet. While the Court finds that the plaintiffs are not entitled to an adverse-presumption jury instruction, they have the right to introduce any evidence on the facts and circumstances surrounding the destruction of the rhythm strips for the fact finder to consider at trial.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion, R. Doc. 28, is **DENIED**.

New Orleans, Louisiana, this 16th day of January, 2024.

_____
United States District Judge